UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GARRICK RICHARDSON,<br>    Defendant. | Criminal Action No. 23-200-1 (JDB) |

## MEMORANDUM OPINION & ORDER

Garrick Richardson is charged by indictment with one count of unlawful firearm possession by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He argues that the indictment must be dismissed because the statute criminalizing firearm possession by felons is unconstitutional as applied to him under New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). For the reasons set forth below, the Court will deny Richardson's motion.

## Background

In the early morning hours on May 13, 2023, a fight broke out in a parking garage near a D.C. night club. Opp'n to Mot. to Dismiss Indictment [ECF No. 41] ("Opp'n") at 2–9.[1] After the altercation ended, two of the men allegedly attempted to flee by car, while their adversaries (now joined by others) surrounded the vehicle. Id. at 2. Among the group, the government says, was Richardson, who is captured on video running toward the fleeing vehicle with a black handgun. Id. at 2–3. Also among the group, according to the government, was co-defendant Dirk Easton, who is accused of firing several shots at the vehicle, quitting only after a round from his own gun ricocheted off the car and struck him in the face. Id. at 4. After the shooting, the group headed by car to George Washington University Hospital, where they dropped off Easton. Id. at 5–6. Police

---

[1] The following facts are drawn from the government's opposition to Richardson's motion. United States v. Park, 938 F.3d 354, 358 (D.C. Cir. 2019) (assuming the truth of the government's allegations for purposes of a motion to dismiss).

1

caught up with Richardson and other participants near the hospital.  Id. at 6.  In the back seat of a car where Richardson had been riding, police found a black Glock 35 .40 caliber handgun equipped with a conversion device known as a "Glock switch" or "giggle switch," which can be used to convert a semi-automatic weapon into a fully automatic one.  Id. at 6–7.  This gun matched the firearm Richardson was seen carrying in the surveillance video.  Id. at 8.

A grand jury indicted Richardson on one count of unlawful firearm possession by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  See Superseding Indictment [ECF No. 22] at 1–2.  He has two prior felony convictions from D.C. Superior Court for possessing a firearm without a license.  See id. at 1 (citing Criminal Case Nos. 2022 CF2 001516 and 2018 CF2 001308); see also Mem. Op. & Order [ECF No. 31] at 3 (discussing prior convictions).  Richardson moved to dismiss the case, arguing that the federal felon-in-possession law violates his Second Amendment rights as construed by the Supreme Court in Bruen.  Mot. to Dismiss [ECF No. 34] ("Mot.").  The government filed an opposition, Opp'n, and Richardson filed a reply, Reply in Supp. of Mot. ("Reply") [ECF No. 43], and notices of supplemental authority from the Middle District of Louisiana, Notice of Add'l Auth. [ECF No. 45], and the Southern District of Illinois, Notice of Add'l Auth [ECF No. 48].  The motion is now fully briefed and ripe for decision.

## **Legal Standard**

A defendant in a criminal case may move to dismiss an indictment before trial for "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  "The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional."  United States v. Eshetu, 863 F.3d 946, 952 (D.C. Cir. 2017) (quoting United States v. Seuss, 474 F.2d 385, 387 n.2 (1st Cir. 1973)), vacated on other grounds, 898 F.3d 36 (D.C. Cir. 2018).

Analysis

I.  **Second Amendment Framework**

Before Bruen, the D.C. Circuit (and other courts of appeal) applied a two-step framework for determining the constitutionality of gun restrictions. See Bruen, 142 S. Ct. at 2126–27. The court would "first ask whether the activity or offender subject to the challenged regulation falls outside the Second Amendment's protections." Schrader v. Holder, 704 F.3d 980, 988 (D.C. Cir. 2013). If yes, the challenge was unsuccessful. Id. at 989. If no, the court would apply strict or intermediate scrutiny depending on "the nature of the conduct being regulated and the degree to which the challenged law burdens the right." Id. (internal quotation marks omitted).

The Bruen Court generally endorsed the first step of that framework, observing that it is "broadly consistent with [District of Columbia v. Heller, 554 U.S. 570 (2008)], which demands a test rooted in the Second Amendment's text, as informed by history." 142 S. Ct. at 2127. The Court, however, rejected application of tiered constitutional scrutiny as a second step in the analysis. Id. at 2129. The Court then articulated the following test for reviewing firearm regulations:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

Id. at 2129–30. Hence, when a law regulates individual conduct generally protected by the Second Amendment, it is the government's burden to produce evidence of relevantly similar historical regulations. See id. at 2131–33.

II.  **Richardson's Challenge**

Richardson argues that 18 U.S.C. § 922(g)(1), which imposes a lifelong ban on firearm possession by felons, is unconstitutional as applied to him under the test laid out in Bruen. He claims that felons are among the "people" protected by the Second Amendment, and that the

government cannot show a relevantly similar historical tradition of disarming felons at the Founding. See, e.g., Mot. at 3–7. He directs the Court to decisions of other courts accepting similar arguments post-Bruen. See Range v. Att'y Gen. of the U.S., 69 F.4th 96 (3d Cir. 2023) (en banc); United States v. Bullock, Crim. A. No. 3:18-165 (CWR), 2023 WL 4232309 (S.D. Miss. June 28, 2023).

Richardson's argument is foreclosed by D.C. Circuit precedent, which necessitates denial of his motion. In Medina v. Whitaker, 913 F.3d 152 (D.C. Cir. 2019), an individual with a felony fraud conviction brought an as-applied challenge to § 922(g)(1), contending that the Second Amendment protects non-dangerous felons' right to possess guns. Id. at 154, 157–58. The court began by looking to "tradition and history," beginning with the "public understanding of the right at [the Founding] to determine if a convicted felon would fall outside the scope of its protection." Id. at 158. The court found support in the historical record for the proposition that felony crimes were often treated as capital offenses at the Founding. Id. The court also noted some states' confiscation of arms from those who would not swear loyalty to the United States. Id. at 159. The court finally considered "guidance from the Supreme Court in Heller" describing felon firearm prohibitions as "'longstanding' and 'presumptively lawful.'" Id. (quoting Heller, 554 U.S. at 626, 627 n.26). "On balance," these authorities led the court "to reject the argument that non-dangerous felons have a right to bear arms" and to hold that "those convicted of felonies are not among those entitled to possess arms." Id. at 159–60.

Medina disposes of Richardson's motion. As seven other judges in this district have concluded, the D.C. Circuit has decided that felons are not entitled to the protections of the Second Amendment, and therefore § 922(g)(1) is facially constitutional. Medina, 913 F.3d at 160 ("[A]

4

felony conviction removes one from the scope of the Second Amendment . . . .").[2] Medina left open the possibility that § 922(g)(1) could be unconstitutional as applied to certain individuals whose predicate offenses were so "minor or regulatory" as to distinguish them from the general class of convicted felons.  Id.  While Richardson frames his challenge as whether § 922(g)(1) is unconstitutional as applied to him, he does not explain why his prior convictions for possessing a firearm without a license do not remove him from the category of law-abiding and responsible individuals under Medina.  Cf. id. ("Whether a certain crime removes one from the category of 'law-abiding and responsible,' in some cases, may be a close question."); Whitaker Op. at 1, 4 (concluding that defendant failed to show why he was a "law-abiding, responsible citizen" notwithstanding his prior convictions for firearms possession and narcotics distribution).  Accordingly, the Court does not consider further whether Richardson's prior convictions might remove him from the class of felons who can be disarmed consistent with Medina.

Instead, Richardson argues that the Court must ignore Medina because it has been overruled by Bruen.  See Mot. at 25–31.  The Court disagrees.  "[D]istrict judges, like panels of [the D.C. Circuit], are obligated to follow controlling circuit precedent until either [the circuit], sitting en banc, or the Supreme Court, overrule it."  United States v. Torres, 115 F.3d 1033, 1036 (D.C. Cir. 1997).  A controlling precedent may be "effectively" overruled, but only when its reasoning has been "eviscerate[d]" by a subsequent Supreme Court decision.  Perry v. MSPB, 829

---

[2] See United States v. Booker, Crim. A. No. 23-103 (RJL) (D.D.C. Nov. 1, 2023) (oral ruling); United States v. Shelton, Crim. A. No. 22-201 (RBW) (D.D.C. Sept. 15, 2023) (oral ruling); United States v. Ingraham, Crim. A. No 22-211 (TJK) (D.D.C. Aug. 3, 2023) (oral ruling); United States v. Glover, Crim. A. No. 20-204 (ABJ) (D.D.C. July 19, 2023), ECF No. 76; United States v. Bailey, Crim. A. No. 22-269 (BAH) (D.D.C. June 14, 2023) (minute order); United States v. Tatum, Crim. A. No. 22-120 (DLF) (D.D.C. Mar. 22, 2023) (oral ruling); United States v. Whitaker, Crim. A. No. 22-272 (CRC) (D.D.C. Jan. 12, 2023), ECF No. 33 ("Whitaker Op."); see also United States v. Wilcox, Crim. A. No. 23-136 (DLF) (D.D.C. Sept. 13, 2023) (oral ruling); United States v. Stewart, Crim. A. No. 22-154 (CRC) (D.D.C. Sept. 6, 2023) (oral ruling).

F.3d 760, 764 (D.C. Cir. 2016) (internal quotation marks omitted), rev'd on other grounds Perry v. MSPB, 582 U.S. 420 (2017).

Bruen did not overrule Medina or "eviscerate" its reasoning. Bruen did not question the constitutionality of the felon-in-possession law. See Bruen, 142 S. Ct. at 2156. To the contrary, Bruen suggested that such restrictions remain valid. The opinion refers repeatedly to the rights of "law-abiding citizens," e.g., id. at 2122, 2131, noting that it was "undisputed" that the plaintiffs, "ordinary, law-abiding, adult citizens—[were] part of 'the people' whom the Second Amendment protects," id. at 2134. In a concurrence, Justice Kavanaugh (joined by Chief Justice Roberts) reiterated his understanding that "longstanding prohibitions on the possession of firearms by felons" were "presumptively lawful." Id. at 2162 (Kavanaugh, J., concurring) (quoting Heller, 554 U.S. at 626, 627 n.26). And Justice Alito, in a separate concurrence, emphasized that Bruen did not "disturb[]" the Court's prior statements about "restrictions that may be imposed on the possession or carrying of guns." Id. at 2157 (Alito, J., concurring).

Richardson argues that Medina did not properly engage in "the comprehensive historical and plain language analysis . . . required [by] Bruen" when determining if felons were among the "people" protected by the Second Amendment. Mot. at 26. Specifically, he claims that Medina did not hold the government to its burden, but rather upheld § 922(g)(1) with little supporting historical evidence. Id. at 27–31. However, Medina generally followed the form of reasoning required by Bruen. Medina engaged in historical analysis to review modern firearm regulations and concluded that historical parallels provided support for the modern regulation; the court did not engage in the tiered constitutional scrutiny Bruen rejects. See Medina, 913 F.3d at 161 ("Because the claim fails at the first step . . . , we need not reach the second step."). Further, the Medina court specifically identified historical analogues it deemed relevant to the modern felon-in-possession law. For example, the court noted the severe penalties often applied to felonies at

6

the Founding and reasoned that "it is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms." Medina, 913 F.3d at 158. The court also cited a proposal at the Pennsylvania ratifying convention limiting gun rights for those convicted of crimes, and laws in two states confiscating weapons of loyalists at the Founding. Id. at 158–59.

While Richardson may disagree about whether these historical sources are "sufficient under Bruen," Mot. at 29, he has identified at most "tension" between Medina and Bruen, which is not enough for this Court to disregard a "prior factually indistinguishable decision." Angelo v. Dist. of Columbia, 648 F. Supp. 3d 116, 129 (D.D.C. 2022) (quoting Brewster v. Comm'r of Internal Revenue, 607 F.2d 1369, 1373 (D.C. Cir. 1979)). Indeed, the D.C. Circuit recently rejected an argument of similar form. In Bahlul v. United States, 77 F.4th 918 (D.C. Cir. 2023), the D.C. Circuit concluded that the Supreme Court did not "eviscerate[]" circuit precedent by "elevating one factor" over two others in a three-factor approach applied previously. Id. at 926–27. Similarly, here, the Supreme Court's refinement of the historical method applied in Medina does not "clearly dictate a departure" from Medina such that this Court could conclude it had been overruled. Id. at 927.

The Court recognizes that some other judges nationally have accepted the arguments generally made by Richardson. And some of those judges have found the D.C. Circuit's analysis in Medina unpersuasive. See, e.g., Range, 69 F.4th at 106. However, it is not for this Court to decide whether it is sufficiently persuaded by the D.C. Circuit's reasoning in Medina so as to follow it. Medina is on point, and this Court will follow it.[3]

---

[3] The supplemental authority filed by Richardson does not alter the Court's conclusion. Neither decision cited was made in the context of similar on-point circuit authority. The decision from the Middle District of Louisiana came after the Fifth Circuit observed that its prior precedents applying tiered constitutional scrutiny to uphold felon-in-possession laws were "obsolete" after Bruen. United States v. Leblanc, Crim. A. No. 23-45 (BAJ), 2023 WL 8756694, at *3–4 (M.D. La. Dec. 19, 2023) (quoting United States v. Rahimi, 61 F.4th 443, 451 (5th Cir. 2023), cert. granted, 143 S. Ct. 2688). Similarly, the decision from the Southern District of Illinois followed a ruling from the

* * *

For the foregoing reasons, it is hereby **ORDERED** that [34] defendant's motion to dismiss is **DENIED**.

/s/
JOHN D. BATES
United States District Judge

Dated: February 2, 2024

---

Seventh Circuit "instruct[ing] district courts to conduct a 'proper, fulsome analysis of the historical tradition supporting § 922(g)(1).'" United States v. Taylor, Crim. A. No. 23-40001 (SMY), 2024 WL 245557, at *2 (S.D. Ill. Jan. 22, 2024) (quoting Atkinson v. Garland, 70 F.4th 1018, 1022 (7th Cir. 2023)). This Court is not similarly placed to depart from the Medina decision.